GABRIEL P. HERRERA, State Bar No. 287093
gherrera@kmtg.com
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation
1331 Garden Hwy, 2nd Floor
Sacramento, California 95833
Telephone: (916) 321-4500
Facsimile: (916) 321-4555

Attorneys for NIKKI B. FARRIS,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>ROSEMARY RONNEL JAMISON,<br><br>        Debtor. | Case No. 25-23916<br>Chapter 7<br><br>DCN: KMT-5<br><br>**MOTION TO APPROVE COMPROMISE**<br><br>Judge:   Hon. Christopher D. Jaime<br>Date:    January 6, 2026<br>Time:   11:00 a.m.<br>Dept.:   B, Crtrm 32, 6th Floor<br>        501 I Street<br>        Sacramento, CA 95814 |

NIKKI B. FARRIS ("Trustee"), in her capacity as the Chapter 7 trustee for the bankruptcy estate of ROSEMARY RONNEL JAMISON ("Debtor"), hereby moves for approval of her settlement agreement ("Agreement") with Edward Santiago and Lori Santiago (collectively "Santiagos") that includes the following pertinent terms:

    (a)    The parties agree that certain real properties generally located at 6100 Stonehand Ave., Citrus Heights, CA 95621 ("Stonehand Property") and 6003 Kuvasz Court, Citrus Heights, CA 95621 ("Kuvasz Property") are property of the Debtor's bankruptcy estate under 11 U.S.C. section 541.

    (b)    Title shall be conveyed to the bankruptcy estate and/or the Trustee may commence an adversary proceeding to effectuate the terms of the Agreement to the extent necessary.

(c) In the event the Trustee is unable to sell the Stonehand Property or the Kuvasz Property, the Trustee may seek court approval to abandon one or more of the properties. In that event, title shall revert back to the name of the Santiagos as if the Agreement was never entered into.

(d) In the event the Kuvasz Property and/or the Stonehand Property are sold or the proceeds collected by the Trustee, the parties agree that the proceeds shall be distributed: (i) First, costs arising from the sale, including broker fees, property taxes, and any tax obligations resulting from the sale; (ii) Second, payment of liens secured by one or more of the properties in their respective priorities; (iii) Third, 35% to the Santiagos and 65% to the bankruptcy estate.

(e) Limited releases to be exchanged with the Santiagos relating only to the Kuvasz Property and the Stonehand Property.

## I.

## JURISDICTION AND FACTUAL BACKGROUND

1. Jurisdiction for the Motion exists pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. Consideration for the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The relief sought is appropriate pursuant to Federal Rule of Bankruptcy Procedure 9019.

2. On or about July 30, 2025, the Debtor commenced the above-captioned bankruptcy case by the filing of a voluntary Chapter 7 petition. The Trustee is the duly appointed Chapter 7 trustee for the Debtor's bankruptcy estate.

3. After a no asset report was filed and the Court directed the Trustee to investigate potential undisclosed assets identified by the Debtor's spouse Charles Jamison ("C. Jamison"), the Trustee investigated, among other things, the estate's interest in the Stonehand Property and the Kuvasz Property. Through her investigation the Trustee learned that:

(a) On or about February 12, 2021, the Debtor and C. Jamison acquired title to the Stonehand Property as community property with right of survivorship. On or about the same day, the Debtor and C. Jamison transferred the Stonehand Property to CDK Investments, LLC ("CDK Investments") by Grant Deed which was recorded as Document No. 202102251022 in

Sacramento County. CDK Investments is a limited liability company established on February 10, 2021. C. Jamison is both the Manager and Chief Executive Officer of CDK Investments.

    (b) On or about September 15, 2023, CDK Investments transferred the Stonehand Property by gift, and for no consideration, to the Santiagos as community property with right of survivorship ("Stonehand Transfer"). The transfer was accomplished by Grant Deed and recorded as Document No. 202309210926.

    (c) On or about February 12, 2021, the Debtor and C. Jamison, acquired title to the Kuvasz Property as community property with right of survivorship. The Kuvasz Property was also transferred to CDK Investments.

    (d) On or about September 15, 2023, CDK Investments transferred the Kuvasz Property by gift, and for no consideration, to the Santiagos as community property with right of survivorship ("Kuvasz Transfer"). The transfer was accomplished by Grant Deed and recorded as Document No. 202309210931.

4. The Santiagos are currently on title to the Stonehand Property, estimated to be worth approximately $500,000 and subject to liens estimated to be $405,000, and the Kuvasz Property, estimated to be worth $450,000 and subject to liens estimated to be $315,000.

5. Ownership to the Stonehand Property and the Kuvasz Property is disputed. The Trustee discovered evidence that the properties may be actually owned by the Debtor and C. Jamison. As such, she contends that the Stonehand Property and the Kuvasz Property are property of the bankruptcy estate under 11 U.S.C. section 541 and the Trustee has sought turnover under 11 U.S.C. section 542. The Santiagos vehemently dispute these claims and has provided some evidence to the contrary.

6. The Stonehand Property and the Kuvasz Property are subject to loans in default. Foreclosure proceedings have been commenced against the properties.

7. The resolution reached culminated after several depositions were caused to be conducted by the Trustee.

/ / /

## II. TERMS OF THE AGREEMENT

For good and valuable consideration and subject to Bankruptcy Court approval at a duly noticed hearing, the Trustee and the Santiagos entered into the Agreement that includes the following provisions:

    3. **Dispute of Claims**. It is understood and agreed that this Agreement is the compromise of disputed claims asserted by the Trustee, and that the terms of settlement contained herein and the releases executed are not intended to be and shall not be construed as admissions of any liability or responsibility whatsoever and the Santiagos expressly deny any liability or responsibility whatsoever.

    4. **Ownership of the Properties**. The parties agree that the Kuvasz Property and the Stonehand Property are property of the bankruptcy estate under 11 U.S.C. section 541.

        4.1 **Title**. Upon the Effective Date, title to the Kuvasz Property and the Stonehand Property shall be conveyed to the bankruptcy estate of the Debtor. In the event title is not timely transferred to the bankruptcy estate, an order and/or judgment may be entered divesting the Santiagos' interest in the Kuvasz Property and the Stonehand Property and vesting title in the name of the bankruptcy estate.

        4.1.2 **Adversary Proceeding**. To the extent necessary and in the Trustee's sole discretion, the Trustee is authorized to commence an adversary proceeding for turnover of the Kuvasz Property and the Stonehand Property and/or to effectuate the terms of this Agreement. This Agreement shall be construed as a stipulation for entry of judgment divesting the Santiagos' interest in the Kuvasz Property and the Stonehand Property and vesting title in the name of the bankruptcy estate.

        4.2 **Reversion of Title**. In the event the Trustee is unable to sell the Kuvasz Property and/or the Stonehand Property, the Trustee may seek court approval to abandon one or more of the properties pursuant to 11 U.S.C. section 554. In that event, title shall revert to the name of the Santiagos as if this Agreement was never entered into.

    5. **Distribution of Any Sale Proceeds**. In the event the Kuvasz Property and/or the Stonehand Property is sold or the proceeds collected by the Trustee, the parties agree that the proceeds shall be distributed as follows:

    First, costs arising from the sale, including broker fees, property taxes, and any tax obligations resulting from the sale;

    Second, payment of liens secured by one or more of the properties in their respective priorities;

    Third, 35% to the Santiagos and 65% to the bankruptcy estate.

/ / /

    5.1 <u>Sale</u>.  Nothing in this Agreement shall be construed as requiring the Trustee to collect, recover, and/or sell the Kuvasz Property and/or the Stonehand Property.

  6. <u>Limited Release</u>.  Subject to the terms of this Agreement, including Bankruptcy Court approval, the Trustee does hereby, for the bankruptcy estate, itself, and its legal or other representatives, agents, affiliates, successors-in-interest and assigns, irrevocably and unconditionally releases, acquits and forever discharges the Santiagos, their employees, officers, affiliates, parent entities, estates, attorneys, predecessors and successors, agents and assigns, and each of them, from any and all lawsuits, claims, actions, demands or other legal or equitable responsibilities, covenants or obligations of any kind which the Trustee may have based on, pertaining to, or arising from the estate's interest in the Kuvasz Property and the Stonehand Property.  Likewise, the Santiagos does hereby for herself and her heirs, legal or other representatives, executors, agents, attorneys, administrators, successors-in-interest and assigns, irrevocably and unconditionally releases, acquits and forever discharges the Trustee, her employees, officers, affiliates, parent entities, estates, attorneys, predecessors and successors, agents and assigns, and each of them, from any and all lawsuits, claims, actions, demands or other legal or equitable responsibilities, covenants or obligations of any kind which the Santiagos may have against the Trustee, pertaining to, or arising from the Kuvasz Property and the Stonehand Property.  The release does not extend to any other claims the Trustee may have against the Debtor and Charles Jamison, if any.

### III. BASIS FOR RELIEF

**A. Authority for Approval of Compromise**

  The Agreement includes a resolution related to ownership of the Kuvasz Property and the Stonehand Property.  In determining whether the Agreement should be approved, the court should consider whether the Agreement is fair and equitable.  *In re Planned Protective Services, Inc.,* 130 B.R. 94, 96 (Bankr.C.D.Cal.1991).  An agreement is fair upon consideration of the following facts: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views.  *In re A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986).  "[A]n exhaustive investigation or mini-trial on the merits" is not required and a trustee's exercise of business judgment should be given deference.  *In re Spirtos*, 2006 WL 6811021, *10 (9th Cir.BAP 2006); see also *Goodwin v. Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415, 420 (9th Cir.BAP 2003).

///

**B.　　Basis for Approval of the Compromise**

　　　　**1.　　The probability of success in the litigation.**

This factor weighs in favor of the Agreement. The Trustee contends that the Kuvasz Transfer and the Stonehand Transfer were not only avoidable transfers, the Trustee also contends that the Santiagos only hold bare legal title to the properties. Through the Trustee's investigation, she discovered evidence to demonstrate that the Debtor and C. Jamison were the true owners. The Santiagos, however, vehemently dispute the Trustee's claims and have presented some evidence to the contrary. Moreover, the Trustee acknowledges that the dispute is highly factual. While the Trustee believes she would prevail in any litigation, the probability of success is ultimately unknown.

　　　　**2.　　The difficulties in collection.**

This factor supports the Agreement. Absent the Agreement, the parties may have been litigating for quite some time which could negatively impact any equity held in the properties given that liens are not being paid and there has been foreclosure proceedings initiated.

　　　　**3.　　The complexity, expense, and inconvenience of the litigation involved.**

This factor supports the Agreement. The estate could incur significant expense litigating a dispute that involves significant factual disputes that span over five years. In fact, hundreds of pages of documents have been provided to the Trustee. Moreover, litigation would be highly inconvenient given that the Agreement provides the estate the benefit of most of the equity of the properties. The law favors compromise and not litigation for its own sake. *In re Blair* (9th Cir. 1976) 538 F. 2d 849, 851.

　　　　**4.　　The paramount interest of the creditors.**

This factor weighs in favor of the Agreement. In the Trustee's opinion, the Agreement is in the best interest of the estate, particularly considering that the Agreement provides the bulk of any equity to be distributed to the estate. Moreover, this was a no asset case that has now turned into an asset case as a result of the Agreement. Notably, the Agreement should implement the automatic stay as to the real properties preventing any immediate foreclosures and providing time for the Trustee to evaluate and potentially liquidate the real properties. Finally, the Agreement culminated

1  in several weeks of discovery, multiple depositions, and the distribution terms were heavily
2  negotiated.  This is not a situation in which the Trustee rushed into a deal.
3        **WHEREFORE**, the Trustee prays that the Motion be granted and for such other and further
4  relief as the Court deems necessary and proper.

6  DATED: December 16, 2025      KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
    A Professional Corporation

By: _____
    Gabriel P. Herrera, Attorneys for
    NIKKI B. FARRIS, Chapter 7 Trustee